UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NORMAN ISRAEL,

      Plaintiff,

v.                                                      No: 8:20-cv-2133-WFJ-AAS

ALFA LAVAL, INC., as successor-
in-interest to the DeLaval Separator
Company; VIAD CORP., f/k/a The
Dial Corp, individually and as successor-
in-interest to Griscom-Russell Co.;
ET AL.,
      Defendants.
_____/

## **ORDER GRANTING MOTIONS TO DISMISS**

This matter is before the Court on Defendant Viad Corp.'s Motion to Dismiss, Dkt. 265, and Defendant Alfa Laval Inc.'s Motion to Dismiss, Dkt. 281, Plaintiff's Third Amended Complaint[1], Dkt. 255. The Court held a hearing for these motions in February 2021 and took the case under advisement until the U.S. Supreme Court issued its opinion in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021). Dkt. 326. Now with the benefit of full

---

[1] Although Plaintiff titles this document "First Amended Complaint," this is actually Plaintiff's Third Amended Complaint.

briefing, oral argument, and the Supreme Court's decision in *Ford*, the Court grants both Motions to Dismiss for lack of personal jurisdiction.

## BACKGROUND

Plaintiff Israel is an 80-year-old Idaho resident with lung cancer. Dkt. 255 at 5, 31; Dkt. 313 at 2. Israel claims he developed this cancer through exposure to asbestos-containing products while he worked as a machinist's mate in the United States Navy from 1958 to 1980. Dkt. 255 ¶¶ 9, 10. Israel has brought suit against dozens of companies that he claims "used, installed, manufactured, sold and distributed" the asbestos-containing products that caused his cancer. *Id.* at ¶ 63.

Israel worked on nine Navy ships during his 22-year career as a machinist's mate. *Id.* at 8–10. Only one of those ships—the *USS Pawcatuck*—was stationed in Florida while Plaintiff was on board. *Id.* at 8. Records show the *USS Pawcatuck* was docked in Jacksonville, Florida, at Naval Station Mayport between 1966 and 1968. *Id.* at 7. However, the ship may have spent time in other states during this two-year period.[2]

---

[2] Defendant Alfa Laval argues the *USS Pawcatuck* spent time in Ohio, Massachusetts, Virginia, and the Mediterranean between 1966 and 1968. *Id.* Plaintiff argues this information cannot be verified. Dkt. 316 at 5 n.15.

One defendant in the case is Alfa Laval, Inc., which Israel sued as the successor-in-interest to the DeLaval Separator Company.[3] *Id.* at 3. Israel claims he was exposed to asbestos when working with oil purifiers made by DeLaval and Sharples. *Id.* at 13. Alfa Laval claims—and Israel does not dispute—that if Alfa Laval or one of its predecessors did supply equipment that was installed on the *USS Pawcatuck*, this would have occurred in Pennsylvania—where the *USS Pawcatuck* was constructed between 1945 and 1946. Dkt. 281 at 7–8. Alfa Laval says this equipment wound up in Florida twenty years later only at the direction of the U.S. Navy, a third party over whom Alfa Laval has no control. *Id.* at 8.

Another defendant in this case is Viad Corp., which Israel sued individually and as the successor-in-interest to Griscom-Russell Co.[4] Dkt. 255 at 5. Israel claims he was exposed to asbestos when working with distillers made by Griscom-Russell. *Id.* at 26. Viad argues—and Israel does not dispute—that if its predecessor did supply equipment that was installed on the *USS Pawcatuck*, this did not occur in Florida. Dkt. 265 at 10.

Both Alfa Laval and Viad now move to dismiss the claims against them for lack of personal jurisdiction. Dkts. 265 and 281. This Court has already found

---

[3] Plaintiff sued Alfa Laval as the successor-in-interest to only DeLaval, and not Sharples Inc. Dkt. 255. Defendant argues this oversight supports dismissal of the claims against it. Dkt. 281 at 4. However, the Court need not address this issue to reach its decision.
[4] Viad denies it is a successor-in-interest to Griscom-Russell Co. Dkt. 265 at 10 n.2. The Court need not determine the status of this relationship in reaching its decision.

there is no general jurisdiction over Alfa Laval, Dkt. 235, and Israel correctly concedes there is no general personal jurisdiction over Viad, Dkt. 313 at 5. Thus, the remaining question is whether there is specific jurisdiction over these defendants.

Israel provided a rather boilerplate-like assertion of jurisdiction against all forty-two defendants. The statement of jurisdiction over Alfa Laval reads:

> Defendant ALFA LAVAL, INC. is a foreign corporation organized in the State of Virginia that purposefully availed itself of the benefits and protections of the State of Florida as Defendant is and/or has engaged in substantial and not isolated activity and/or transacted substantial revenue producing business and/or is essentially at home in the State of Florida such that the exercise of jurisdiction does not offend traditional notices of fair play and substantial justice. With respect to this Defendant, Plaintiff alleges asbestos exposure and subsequent injury to friable asbestos emanating from at minimum Delaval and Sharples oil purifiers and pumps' insulation, packing, and gaskets while in the State of Florida as well as at the locations listed above.

Dkt. 255 at 13. The statement against Viad Corp. is materially similar. *Id.* at 26. Israel later included several exhibits to support the exercise of personal jurisdiction over these defendants. *See* Dkt. 313, Exs. 1–8; Dkt. 316, Exs. 1–11.

## LEGAL STANDARD

Whether a federal court has personal jurisdiction over a defendant is a question of law. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). The plaintiff bears the burden of proof to establish personal

jurisdiction over a nonresident defendant. *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). To the extent the "plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.* at 1269 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

A court must conduct a two-step analysis when evaluating whether it has personal jurisdiction over a defendant. *See Madara*, 916 F.2d at 1514. First, the court must determine whether the plaintiff has alleged facts sufficient to establish a basis for jurisdiction under Florida's long-arm statute. *Id*. If the answer is yes, then the court must determine whether the exercise of jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Id*. "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Id*.

Under the due process clause, a court's jurisdictional authority depends on the defendant having such "contacts" with the forum state that "the maintenance of the suit" is reasonable and "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). When making this determination, the Supreme Court has long focused on the nature and

5

extent of "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1779 (2017) (citing cases).

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (cleaned up). This means that "the plaintiff cannot be the only link between the defendant and the forum." *Id*. at 285. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Under Eleventh Circuit precedent, specific jurisdiction exists if the following three prongs are satisfied: (1) the plaintiff has established that his claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) the plaintiff has demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of jurisdiction would not violate traditional notions of fair play and substantial justice. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). At issue here is the first prong: whether Israel's claims "arise out of or relate to" the defendants' contacts with Florida.

## DISCUSSION

I. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

The U.S. Supreme Court recently issued a decision clarifying when a plaintiff's claims sufficiently "arise out of or relate to" a defendant's contacts with the forum state so that specific jurisdiction is triggered. *See Ford*, 141 S. Ct. at 1026. In that case, two plaintiffs suffered injuries allegedly caused by defects in their Ford cars. *Id.* at 1023. One suit was brought in Montana, and the other in Minnesota. *Id.* Both accidents occurred in the respective forum states and involved residents of those states. *Id.* at 1022.

Ford conceded it did substantial business in both Montana and Minnesota, agreeing that it had "purposefully availed itself of the privilege of conducting activities" there. *Id.* at 1026. These business activities included in-state sales of the exact same car models involved in the accidents, as well as in-state servicing of Ford cars and advertisements of its products. *Id.* at 1023–24.

Nevertheless, Ford argued specific personal jurisdiction did not exist in either case. *Id.* at 1026. Ford claimed personal jurisdiction should attach "only if the defendant's forum conduct *gave rise* to the plaintiff's claims." *Id.* And, according to Ford, this meant personal jurisdiction existed only in the states where Ford sold, manufactured, or designed the cars in question—regardless of where the injuries occurred or how much other business Ford conducted there. *Id.* In the

cases at hand, neither car was originally sold in the forum states; they were brought there only through resales and consumer relocations. *Id.* at 1023. And neither car was designed or manufactured in the forum states. *Id.* As such, Ford argued specific jurisdiction was not present because there was not a sufficient causal connection between the plaintiffs' claims and Ford's activities in the forum states. *Id.* at 1026.

Ford's approach aligned with the Eleventh Circuit's precedent at that time. In *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018), the Eleventh Circuit held that "a tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." In the absence of such a causal connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1781). The Eleventh Circuit noted, however, that the Supreme Court had not yet imposed an explicit but-for causation requirement for specific jurisdiction; this requirement stemmed from the Eleventh Circuit's own case law. *Id.* at 1315.

In *Ford*, the Supreme Court rejected this but-for causation requirement, thereby overruling the Eleventh Circuit's test from *Waite*. *See Lewis v. Mercedes-Benz USA, LLC*, No. 19-CIV-81220-RAR, 2021 WL 1216897, at *35 (S.D. Fla. March 30, 2021) (holding that *Ford* overruled Eleventh Circuit's ruling in *Waite*);

8

*see also James Lee Constr., Inc. v. Gov't Emps. Ins. Co.*, No. 20-68-M-DWM, 2021 WL 1139876, at *2 (D. Mont. Mar. 25, 2021) (finding that *Ford* overruled the Ninth Circuit's similar "but-for" specific jurisdiction test). The Court explained that it has "never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford*, 141 S. Ct. at 1026. Although the first half of the "arise out of or relate to" standard asks about causation, the second half—the "relate to" portion—contemplates that some relationships will support jurisdiction *without* a causal showing. *Id.* A close relationship between the plaintiff's injuries and the defendant's contacts with the forum state could suffice instead. *Id.* at 1032.

However, despite rejecting a but-for causation requirement, the Court noted that specific personal jurisdiction still has real limitations. *Id.* at 1026. The *Ford* ruling "does not mean anything goes" in the context of specific jurisdiction, nor does it mean that "any person using any means to sell any good in a State is subject to jurisdiction there if the product malfunctions after arrival." *Id.* at 1026, 1028 n.4. Rather, "the phrase 'relate to' incorporates real limits" and "isolated or sporadic transactions" within a forum state may not support specific jurisdiction there. *Id.*

Applying this framework to the facts at hand, the Court ruled that personal jurisdiction was present because Ford had contacts with the forum states that were sufficiently related to the plaintiffs' claims. *Id.* at 1028. Importantly, Ford had

9

advertised, sold, and serviced cars in both forum states for many years, including the very car models the plaintiffs drove during their accidents. *Id.* "In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States." *Id.* This created a strong enough relationship among "the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." *Id.* (cleaned up). The Court contrasted this with a hypothetical case wherein Ford marketed the car models only in different states or regions. *Id.*

Moreover, both plaintiffs were residents of their respective forum states, and both were injured in their respective forum states, too. *Id.* at 1031. These factors made Montana and Minnesota "the most natural State[s]" for the plaintiffs to bring their claims. *Id.* "When a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.* at 1022.

In sum, *Ford* allows the exercise of personal jurisdiction in cases wherein the claims sufficiently relate to the defendant's contacts with the forum state, even if the claims are not caused by those contacts.

## II. This Court Does Not Have Personal Jurisdiction Over Defendant Alfa Laval.

This Court will now apply *Ford* to the issues at hand. Because the Court has already found that Florida's long-arm statute is satisfied as to Alfa Laval, *see* Dkt. 235, the Court need only address the due process analysis.

Alfa Laval argues specific jurisdiction is not present because the DeLaval and Sharples products that allegedly injured Israel were not designed, manufactured, or sold in Florida. Dkt. 281 at 7–8. According to Alfa Laval, if it or its predecessors had provided purifiers to the U.S. Navy to be installed on the *USS Pawcatuck*, this would have occurred not in Florida, but in Pennsylvania—where the ship was constructed. *Id.* Only after twenty years did this equipment end up in Florida (assuming it was still onboard), and only because of the Navy's unilateral decision to send the *USS Pawcatuck* to the Mayport Station in Jacksonville. *Id.*

After *Ford*, it is no longer dispositive that the purifiers that allegedly injured Israel were not designed, manufactured, or sold in Florida. Alfa Laval's contacts with Florida need not be the direct cause of Israel's injuries. Because *Ford* overturned the Eleventh Circuit's but-for causation requirement from *Waite*, Alfa Laval can no longer rely on this argument as its silver bullet.

Nevertheless, specific jurisdiction still requires that Plaintiff Israel's claims be sufficiently related to Alfa Laval's contacts with Florida. For the reasons

explained below, none of the contacts offered by Plaintiff are sufficient to trigger specific jurisdiction.

First, Israel argues there is specific jurisdiction because he was allegedly exposed to asbestos emanating from DeLaval and Sharples products while he was on Florida soil at the Mayport Station. Dkt. 316 at 11–12. But the location of a plaintiff's alleged injury cannot support specific jurisdiction on its own. *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Moreover, it is uncertain whether Israel's injury even occurred in Florida. Out of the nine ships where Israel could have been exposed to asbestos, only one was stationed in Florida. And out of Israel's 22-year career as a Navy machinist mate, he stayed in Florida for only two years.[5] For these reasons, Israel's purported injury on Florida soil is not sufficient to trigger specific jurisdiction.

Second, Plaintiff argues specific jurisdiction is present because Sharples has been registered to conduct business in Florida since 1964, and Alfa Laval is currently registered to conduct business in Florida. Dkt. 316 at 14–15. But the mere fact that Alfa Laval and its predecessor Sharples are registered to do business

---

[5] And as explained above in Footnote 2, it is uncertain whether the *USS Pawcatuck* exclusively stayed in Florida during this two-year period.

in Florida is not enough to trigger specific jurisdiction on its own. *See Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("A corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011))). Plaintiff Israel has not established any connection between his claims and the companies' business within the state.

Third, Plaintiff provides documents showing Sharples and DeLaval did business with the State of Florida in 1903 and 1919. Dkt. 316, Ex. 9 at 1–9. However, these records do not indicate what this business actually involved or what products the companies sold. Such unidentified business contacts are not sufficiently related to Plaintiff's claims.

Similarly, Plaintiff attaches a product advertisement for Cummins-Wagner-Florida LLC, which purportedly identifies itself as the "Master Distributor and Pump Super Center for Alfa Laval." *Id.* at 18–19. Plaintiff also provides a press release showing that Alfa Laval acquired a Sarasota-based engine cooling company in 2010. *Id.* at 21–22. Again, Plaintiff makes no connection between these business contacts and the claims in this suit.

Finally, Plaintiff offers a declaration from Captain Francis J. Burger stating that Alfa Laval and its predecessors supplied equipment to the Navy that contained

13

asbestos. *Id.* at 10–16. Captain Burger attests that Alfa Laval sold replacement parts for this equipment to the Navy and sent out field service agents to inspect and service this equipment. *Id.* at 15. However, Captain Burger was unable to attest to whether this business was done in Florida, instead saying: "It is likewise highly improbable that Alfa Laval did no business with the Navy in Florida in the 1940s-1970s." *Id.*

This does not sufficiently tie Plaintiff's claims to any contacts Alfa Laval or its predecessors had with Florida. One of the main foundations of the *Ford* decision was that Ford extensively served markets in the forum states with its products—indeed, the very same car models involved in the crashes. 141 S. Ct. at 1028. The Supreme Court stated: "When a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Id.* at 1022. But here, Israel does not show that Alfa Laval served a market in Florida for products similar to those at issue in this case. Indeed, Plaintiff's counsel conceded this point at oral argument:

> MS. EARLY: I provided Captain Berger's declaration. He's our naval expert . . . . [H]e expressly says that Alfa Laval and other equipment manufactures were selling to naval shipyards replacement parts. Now Mayport Naval Shipyard is located in Florida. So it follows that Alfa Laval back in 1945 and through at least 1980s would have been selling and distributing to Mayport shipyard.

> THE COURT: Hold on. You're saying as an officer of the court that Alfa Laval shipped these defending goods into Jacksonville.
>
> MS. EARLY: No. What I'm saying is Captain Burger attests that Alfa Laval and other equipment manufacturers were selling replacement parts to naval shipyards.

*See* Hearing Transcript, p. 9. Without a documented tie to Florida, the fact that Alfa Laval had a general practice of selling products to naval shipyards across the country does not offer enough connection to the forum state to trigger specific jurisdiction.

In sum, Israel has not brought his claims against Alfa Laval in "the most natural State." *See Ford*, 141 S. Ct. 1031 (citing *Bristol-Myers Squibb*, 137 S. Ct. at 1779–81). Israel is not a Florida resident. It is uncertain whether he suffered injury in Florida. And he cannot show that Alfa Laval or its predecessors served a market in Florida for the type of product at issue in this case. The only fact linking Israel's claims against Alfa Laval to this forum is his brief stay on the *USS Pawcatuck* while it was docked in Jacksonville. And this connection to Florida came about only because the Navy—a third-party over whom Alfa Laval exerts no control—directed the ship to Florida twenty years after Alfa Laval's predecessors allegedly provided the offending equipment. Such a serendipitous connection does not warrant the exercise of personal jurisdiction.

As a final note, the principles of interstate federalism do not support the exercise of jurisdiction here. As noted in *Ford*, states have a significant interest in

providing their residents with a forum to redress injuries as well as enforcing their own safety regulations. 141 S. Ct. at 1030 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) and *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 776 (1984)). This interest is entirely absent here. Alfa Laval must be dismissed.

### III. This Court Does Not Have Personal Jurisdiction Over Defendant Viad Corp.

Similarly, the Court finds there is no personal jurisdiction over Viad Corp. Although Florida's long-arm statute is satisfied, Israel again fails to show his claims are sufficiently related to Viad's contacts with Florida.

#### A. The Exercise of Jurisdiction over Viad Corp. Satisfies Florida's Long-Arm Statute.

As explained in a previous order, Dkt. 235, this Court must apply the long-arm statute that was in effect when the defendant's alleged injurious act occurred, *i.e.*, when the defendant manufactured and/or distributed the alleged asbestos-containing product. *See Fibreboard Corp. v. Kerness*, 625 So. 2d 457, 458 (Fla. 1993). Thus, this Court must apply the long-arm statute in effect between 1945 and 1946—when Defendant Viad allegedly manufactured and/or distributed the asbestos-containing products during the construction of the *USS Pawcatuck*. *See Sculptchair*, 94 F.3d at 627 (holding that federal courts are required to construe the Florida long-arm statute as would the Florida Supreme Court). Although at that time Florida did not yet have a statute that resembles its modern-day long-arm

statute, it did have Fla. Stat. § 47.17, which set forth the rules for serving process on foreign corporations. This statute required the in-state presence of certain officers for the foreign corporation, or in their absence, an agent conducting business for the foreign corporation in Florida.

Here, Viad has one employee who works in Florida. Dkt. 265 at 2. This employee constitutes an "agent transacting business" within the meaning of § 47.17. As such, Florida's long-arm statute is satisfied here.

### B. The Exercise of Jurisdiction Over Viad Violates the Due Process Clause.

The Court must now examine whether the exercise of specific jurisdiction over Viad Corp. comports with federal due process. For reasons similar to those discussed above, the Court holds that it does not.

Israel argues specific jurisdiction is present because he was allegedly injured using Griscom-Russell distillers while in the State of Florida. Dkt. 313 at 6. For the same reasons explained above, the place of a plaintiff's injury cannot establish specific jurisdiction on its own, and it is unclear whether Israel's injuries even took place in Florida.

Israel also argues specific jurisdiction is present because Griscom-Russell, through its alleged predecessors, has been registered to conduct business in Florida since 1939, and Viad Corp. has been registered to conduct business in Florida since

1992. *Id.* at 9. For the reasons stated above, these registrations by themselves do not sufficiently relate to Israel's claims so that specific jurisdiction is present.

Finally, Israel points to a flurry of business activities Viad Corp. has allegedly performed in Florida. These activities include managing fuel tank lines at the Miami and Orlando International Airports, being involved in litigation arising from fuel spills, operating as a parent company of a Florida cruise line, and having an event-organizing business group that provides "full-service operations in every major exhibition market, including . . . Orlando." Dkt. 313 at 7–8. It is clear these activities do not relate to the claims at hand and therefore are not sufficient to trigger specific jurisdiction. Again, the only fact linking Israel's claims against Viad. Corp. to this forum is his brief stay on the *USS Pawcatuck* while it was docked at the Mayport Naval Shipyard. What is needed—and what is missing here—is "a strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." *Ford*, 141 S. Ct. at 1028 (cleaned up).

## CONCLUSION

The Court **GRANTS** Defendant Viad Corp.'s Motion to Dismiss (Dkt. 265) and Defendant Alfa Laval's Motion to Dismiss (Dkt. 281) for lack of personal jurisdiction. The clerk is directed to terminate these parties from the case. Alfa

Laval and Viad are dismissed from this case, and Plaintiff will not be allowed to amend his complaint to add these defendants back.

**DONE AND ORDERED** at Tampa, Florida, on April 28, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record