# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

NORMAN ISRAEL,

      Plaintiff,

v.                                    No: 8:20-cv-2133-02-AAS

JOHN CRANE, INC., *formerly doing business as* CRANE PACKING; ET AL.,

      Defendants.

_____/

## ORDER

Before the Court is Defendant John Crane Inc.'s Motion for Summary Judgment. Dkt. 434. Plaintiff Norman Israel responded, Dkt. 452, to which Defendant John Crane replied, Dkt. 467. The Court held oral arguments on April 12, 2022. Dkt. 507. Having thoroughly reviewed the record and relevant case law, the Court grants Defendant John Crane's motion based on the statute of limitations.

## BACKGROUND

Plaintiff Israel is an 81-year-old man with lung cancer. He claims he developed this cancer through exposure to asbestos-containing products while he worked as a machinist's mate in the United States Navy from 1958 to 1978. Dkt. 255 ¶¶ 8−9. According to Mr. Israel, these alleged exposures took place while he

was aboard ships that were docked in domestic Naval shipyards, tied alongside tenders at such shipyards, docked in foreign ports, or at sea. Dkt. 433 at 3.

In 1998, Mr. Israel filed a lawsuit in the U.S. District Court for the Northern District of Ohio (the "1998 Complaint"). *Id.* at 4; Dkt. 433-2. Mr. Israel claimed he was exposed to asbestos while working as a merchant mariner after he left the Navy. Dkt. 433-2. The 1998 Complaint labeled asbestos as a "perilous carcinogen toxin" and alleged Mr. Israel breathed "carcinogenic asbestos dust." *Id.* at 3. Mr. Israel alleged this asbestos exposure caused him to suffer "cancerphobia." *Id.* at 4. He further stated: "Plaintiff suffers harm in the form of necessity to be monitored for other asbestotic diseases including lung cancer." *Id.* During his deposition in the instant case, Mr. Israel claims he does not remember the 1998 Complaint. Dkt. 452-1 at 4; Dkt. 452-4 at 1070–71. Mr. Israel says he spoke to his attorney on the 1998 case only through mail or the occasional phone call. Dkt. 452-1 at 4; Dkt. 452-4 at 1070−71.

Mr. Israel sought preventative monitoring for asbestos-related diseases in 2013.[1] Dkt. 433-4; Dkt. 433-5. A pulmonologist conducted pulmonary function tests on Mr. Israel and performed CT scans on his chest. Dkt. 433-4. These scans revealed abnormal chest imaging. *Id.* On September 22, 2013, the pulmonologist

---

[1] Mr. Israel argues he underwent screening "exclusively for mesothelioma," not lung cancer, in 2013. Dkt. 452-1 at 8. The record evidence shows otherwise. A CT scan performed on Mr. Israel in 2013 showed the possibility of lung cancer. Dkt. 467-1 at 4.

stated the following about his consultation with Mr. Israel: "[Mr. Israel] requested further evaluation for possible asbestos related lung problems . . . He thinks he may have had significant exposure to asbestos and worries about his potential for asbestos related disease." *Id.*

Mr. Israel discussed the results of his CT scan with the pulmonologist on June 26, 2014. Dkt. 467-1 at 4. This consultation was memorialized in notes taken by the pulmonologist. *Id.* He wrote that Mr. Israel may have "possible bronchoalveolar cell carcinoma." *Id.* Because this lesion would be difficult to biopsy, the pulmonologist recommended Mr. Israel return for a follow-up CT scan in three months. *Id.* The pulmonologist also wrote: "We discussed that if he ultimately proves to have lung cancer it might be asbestos related." *Id.* The pulmonologist then stated that the "[s]tudy results were review [sic] with the patient as summarized" and "[t]hese issues were discussed with the patient." *Id.*

Mr. Israel was diagnosed with lung cancer on December 21, 2016. Dkt. 452-1 at 3. He claims the doctor did not discuss any potential causes of his cancer at the time of diagnosis. *Id.*

Mr. Israel later hired an expert to review his medical history and diagnose the cause of his lung cancer. Dkt. 452-5. In a letter dated September 8, 2017, the expert stated: "Norman L. Israel suffers from interstitial and pleural disease and

lung cancer caused by his exposure to asbestos while serving as a merchant mariner." *Id*. The letter is addressed to the Maritime Asbestosis Legal Clinic. *Id*.

On July 30, 2020, Mr. Israel filed the instant lawsuit against dozens of companies, including Defendant John Crane, in Florida state court. Dkt. 1-1. He alleges his lung cancer was caused by asbestos-containing products that were manufactured by the defendants and used by Mr. Israel while he was in the Navy. Dkt. 255 ¶ 11. He is seeking compensatory damages for his injuries. *Id*. at 31. The case was removed to federal court on September 10, 2020. Dkt. 1.

On January 5, 2021, Mr. Israel served his responses to defendants' interrogatories and requests for admissions. Dkt. 433-10. Mr. Israel was deposed over the course of six days in late January 2021 and February 2021. Dkt. 435-1; Dkt. 435-2; Dkt. 435-3; Dkt. 435-4; Dkt. 435-5.

Defendant John Crane now seeks summary judgment, arguing Plaintiff's claims are time-barred under the maritime statute of limitations, 46 U.S.C. § 30106. Dkt. 434. The Court addresses this motion below.

## LEGAL STANDARD

Summary judgment should be entered only if there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an

otherwise properly supported summary judgment motion; it must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id*. at 248.

If factual issues are present and they are material, the Court must deny the motion and proceed to trial. *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp*., 912 F.2d 1379, 1383 (11th Cir. 1990).

## DISCUSSION

Under maritime law, "a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." 46 U.S.C. § 30106. The parties agree that maritime law—and therefore the three-year statute of limitations—applies to this case. Dkt. 434 at 2; Dkt. 452 at 7 n.24. They dispute, however, when Mr. Israel's cause of action "arose" such that the present cause of action accrued. Because Mr. Israel filed his suit on July 30, 2020, his claims are timely only if his cause of action arose after July 30, 2017.

The clock begins ticking for maritime tort claims when a plaintiff "knew or should have known of his injury and its cause." *See White v. Mercury Marine*, 129 F.3d 1428, 1435 (11th Cir. 1997); *see also Crisman v. Odeco, Inc.*, 932 F.2d 413, 415 (5th Cir. 1991) (holding that a cause of action under general maritime law "accrues when a plaintiff has had a reasonable opportunity to discover his injury, its cause, and the link between the two"). Under this so-called "discovery rule," the plaintiff must act diligently to investigate the injury and any suspect cause. *See White*, 129 F.3d at 1433; *U.S. v. Kubrick*, 444 U.S. 111, 123 (1979).

Defendant John Crane argues the statute of limitations began accruing on December 21, 2016—when Mr. Israel received his lung cancer diagnosis. Dkt. 434 at 3. This trigger date would render Mr. Israel's claims untimely. Mr. Israel argues the trigger date is instead September 8, 2017, which—according to Mr. Israel— was the first time a doctor opined that asbestos exposure caused his lung cancer. Dkt. 452 at 4; Dkt. 452-5. In essence, Mr. Israel claims that his cause of action could not accrue until a physician confirmed a causal connection between asbestos exposure and his cancer diagnosis. And because no doctor discussed such a connection with him during his diagnosis in December 2016, Mr. Israel says he did not know and could not have known asbestos was a potential cause of his cancer at that time.

The Court disagrees. The record reveals Mr. Israel has long harbored fears about developing asbestos-induced lung cancer. As explained below, there are several instances in the record showing Mr. Israel knew—or at the very least should have known—by December 2016 that his cancer diagnosis potentially stemmed from his prior exposure to asbestos, thereby barring his claims under the maritime statute of limitations.

### 1. The 1998 Complaint

In 1998, Mr. Israel sued several companies in Ohio federal court over his exposure to asbestos while working as a merchant mariner. Dkt. 433-2. The 1998 Complaint made several references to the link between cancer and asbestos exposure. For example, the complaint labeled asbestos as a carcinogen several times. *Id.* at 3. Mr. Israel alleged the asbestos exposure caused him to develop "cancerphobia," including the fear of lung cancer. *Id.* at 4. And the complaint stated: "Plaintiff [Israel] suffers harm in the form of necessity to be monitored for other asbestotic diseases including lung cancer." *Id.* at 4.

The doctrine of judicial estoppel protects the integrity of the judicial process "by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) (en banc) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (alterations adopted)). There is a two-part test for determining when

judicial estoppel applies: (1) whether the party took an inconsistent position under oath[2] in a separate proceeding, and (2) whether these inconsistent positions were "calculated to make a mockery of the judicial system." *Id.* at 1181 (citation omitted). A court should consider all the facts and circumstances of the case when determining whether a party's inconsistent statements were calculated to make a mockery of the judicial system. *Id*. at 1185. Courts typically also consider whether the inconsistency is clear, whether the party had success in persuading the earlier court to accept the position, and whether an unfair advantage or detriment would accrue in the present litigation if not estopped. *Korman v. Iglesias*, 778 F. App'x 680, 682 (11th Cir. 2019) (per curiam) (citing *Slater*, 871 F.3d at 1181).

The Court holds that Mr. Israel's position in this case is inconsistent with the positions he took in the 1998 Complaint. Mr. Israel claimed several injuries in the 1998 Complaint based on the understanding that his prior asbestos exposure put him at risk for a future cancer diagnosis. Dkt. 433-2 at 4 ("Plaintiff sustained injuries [including] . . . Fear of cancer and other asbestotic disease onset; Costs of being forever medically monitored for disease onset and worsening[.]"). Indeed, the 1998 Complaint specifically recognized that asbestos exposure could cause

---

[2] The requirement that the prior inconsistent statement be made under oath is not "inflexible or exhaustive." *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 643 n.4 (11th Cir. 2019) (citing *Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282, 1286 (11th Cir. 2002)). More important than the oath requirement is whether the party's statements are intended to mislead or deceive the court. *Id.* Although Mr. Israel's allegations in the 1998 Complaint were not made under oath, the Court nevertheless holds that equity and fairness calls for consideration of the prior allegations.

lung cancer. *Id.* ("Plaintiff suffers harm in the form of necessity to be monitored for other asbestotic diseases *including lung cancer*.") (emphasis added). These assertions are plainly inconsistent with Mr. Israel's current argument that he could not have known asbestos was a potential cause of lung cancer until late 2017.

The Court rejects Mr. Israel's attempts to harmonize his previous position with his present one. *See Korman*, 778 F. App'x at 683 (holding that district court reasonably rejected party's attempt to harmonize conflicting positions). Mr. Israel argues this Court cannot attribute to him statements from the 1998 Complaint because he does remember that case. Dkt. 452 at 11 (arguing Mr. Israel does "not recall the prior complaint whatsoever" and there is "no evidence demonstrating Mr. Israel was even *aware* of the statements asserted in the 1998 complaint") (emphasis in original). Mr. Israel says he would speak with his counsel from the 1998 case only through mail or the occasional phone call. Dkt. 452-4 at 1070–71. Thus, "[i]t logically follows that the particularities of the prior lawsuit's allegations do not accurately reflect *Mr. Israel's* own knowledge regarding disease causation, but rather his *former attorney's*." Dkt. 452 at 11 (emphasis in original).[3]

---

[3]    Mr. Israel also argues the allegations in the 1998 Complaint cannot be attributed to him because res judicata does not apply. This argument is beside the point, however, because it is clear res judicata does not apply.

A claim is barred by res judicata, *i.e.*, claim preclusion, when "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale v. Rubbermaid, Inc*., 193 F.3d 1235, 1238 (11th Cir. 1999). Here, the fourth prong is not satisfied. The 1998 Complaint alleged Mr. Israel was

The Court disagrees. To accept this argument, the Court would need to believe Mr. Israel's former attorneys violated Rule 11 of the Federal Rules of Civil Procedure, which requires attorneys to certify there is evidentiary support for all factual contentions presented to federal courts. Fed. R. Civ. P. 11(b)(3). Moreover, lawyers are agents of their clients; clients are therefore bound by what their lawyers assert in a case. *See* Grace M. Giesel, *Client Responsibility for Lawyer Conduct: Examining the Agency Nature of the Lawyer Client Relationship*, 86 NEB. L. REV. 346, 355 (2007) ("A client is responsible for a lawyer's statements if the statements are made with actual authority or if the statements concern 'a matter within the scope of the representation and [are] made by the lawyer during it.'") (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 27 (2000)). There is no evidence the 1998 attorney lacked actual authority to make these claims or acted outside the scope of Mr. Israel's representation. These statements are therefore legally attributable to Mr. Israel despite his current inability to remember them.

Turning to the second part of the judicial estoppel test, the Court holds that Mr. Israel's inconsistent positions were calculated to make a mockery of the

---

exposed to asbestos while working as a merchant mariner *after* he left the U.S. Navy. Dkt. 433-2 (suing private companies as "shipowners"). In this case, however, Mr. Israel alleges he was exposed to asbestos while working for the U.S. Navy. Dkt. 255 at 10. These are two separate causes of action dependent upon different sets of facts.

judicial system. The 1998 attorneys represented to the Ohio federal court there was evidentiary support for the allegation that Mr. Israel had cancerphobia. Fed. R. Civ. Pro. 11(b)(3). Allowing Mr. Israel to proceed here with his new position would create the perception that the Ohio federal court was misled. *See Korman*, 778 F. App'x at 683 (holding that judicial estoppel applied where inconsistent positions created perception that prior court was misled). It would also give Mr. Israel an unfair advantage. In the 1998 case, Mr. Israel had the opportunity to collect damages based on his alleged knowledge that asbestos exposure could cause lung cancer.[4] If the Court accepted Mr. Israel's argument in this case, he would have the opportunity to collect damages based on his alleged *lack* of knowledge that asbestos exposure could cause lung cancer.

In sum, the Court holds that the balance of equities favors considering Mr. Israel's allegations in the 1998 Complaint. When looking at all facts and circumstances of this case, the Court believes consideration of these allegations is necessary to "protect the judiciary, as an institution, from the perversion of judicial machinery." *Korman*, 778 F. App'x at 683 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)). The 1998 Complaint is evidence that Mr.

---

[4] *See* Dkt. 453-4 at 40:5-11 (admitting "some settlements dribbled in" from the 1998 case); Dkt. 453-5 at 78:14-18 (admitting he "received a few checks" from the 1998 case); *but see id.* at 91 (expressing confusion about whether those checks were from the 1998 case or asbestos bankruptcy trusts).

Israel knew or should have known on December 21, 2016, that his lung cancer diagnosis may have been caused by his prior exposure to asbestos.[5]

## 2.  Medical Records from 2013 and 2014

In 2013, a pulmonologist performed a precautionary CT scan on Mr. Israel's chest. Dkt. 433-4; Dkt. 433-5. The pulmonologist made the following notes about the visit: "[Mr. Israel] requested further evaluation for possible asbestos related lung problems . . . He thinks he may have had significant exposure to asbestos and worries about his potential for asbestos related disease." Dkt. 433-4.

The pulmonologist discussed the results of the CT scan with Mr. Israel in June 2014. Dkt 467-1 at 4. He stated Mr. Israel may have "bronchoalveolar cell carcinoma," a type of lung cancer.[6] Crucially, the pulmonologist also wrote: "We discussed that if he ultimately proves to have lung cancer it might be asbestos related." *Id.* The pulmonologist then verified that "the study results were review [sic] with the patient as summarized" and "[t]hese issues were discussed with the patient." *Id.*

---

[5] Mr. Israel also filed several claims with asbestos bankruptcy trusts starting in 2010. Dkt. 433-9. The claim forms required Mr. Israel to check off his "diagnosed asbestos-related injuries." *Id.* at 5. There were two options for lung cancer on this list. *Id.* Mr. Israel did not check the boxes for lung cancer until 2018. *Id.* at 149. Instead, he checked "asbestosis/pleural disease." *See, e.g.*, *id.* at 22. The claim forms listed the Ohio federal lawsuit from 1998. *Id.* at 126. The forms stated, *inter alia*, that the "injured party handled raw asbestos fibers on a regular basis." *Id.* at 7.

[6] *See Gregory v. McDonald*, No. 15-1816, 2016 WL 6901434, at *2 (U.S. Vet. App. Nov. 23, 2016) (labeling bronchoalveolar cell carcinoma as a type of lung cancer).

These medical records are evidence that Mr. Israel knew—or at least should have known—at the time of his December 2016 diagnosis that his prior exposure to asbestos may have caused his lung cancer. Just as he alleged in the 1998 Complaint, Mr. Israel sought preventative treatment for asbestos-related lung problems. Mr. Israel's suspicions remained so strong that he openly discussed his fears with his physicians.

More importantly, however, the doctor advised Mr. Israel that any future diagnosis of lung cancer may be caused by asbestos.[7] This medical opinion specifically linked the inhalation of asbestos fibers to the development of lung cancer. The pulmonologist certified that he discussed these issues with Mr. Israel, including the possibility that Mr. Israel already had bronchoalveolar cell carcinoma. These statements put Mr. Israel on notice more than two years before his lung cancer diagnosis and more than six years before he filed suit that his prior exposure to asbestos could cause him to develop lung cancer. *See Dolling v. Amanda Hess Corp.*, 83 F. Supp. 2d 843, 849–50 (S.D. Tex. 2000) (holding that maritime statute of limitations barred plaintiff's claims because earlier medical evaluations put plaintiff on notice about possible connection between his condition and his exposure to petroleum-based vapors).

---

[7] Mr. Israel argues "none of the records Defendant cites indicate a causal link communicated to Mr. Israel." Dkt. 452-1 at 10. The 2014 medical report explicitly refutes this assertion.

13

### 3. Mr. Israel's Interrogatory Response

Mr. Israel—with the aid of his present attorney—answered the following

interrogatory question under oath:

> 30. State the extent of your knowledge with respect to the health hazards of inhaling asbestos.
>
> a. The date, time and place that your first acquired such knowledge.
>
> **Answer: Approximately December 21, 2016, when Plaintiff was diagnosed with lung cancer.**

Dkt. 433-10 at 16 (emphasis in original). In this response, Mr. Israel admits he

learned about the causal connection between lung cancer and asbestos exposure on

December 21, 2016, which falls outside the statute of limitations period. This

sworn testimony would defeat Mr. Israel's position here.

Mr. Israel later backtracked this interrogatory response, arguing he meant to

supply the date he learned asbestos was *generally* hazardous—not the date he

learned asbestos caused lung cancer. Dkt. 452 at 3. During his deposition, Mr.

Israel testified to this effect:

> Q.    Did you have any ideas [sic] when you were diagnosed with lung cancer that exposure to asbestos could cause lung cancer?
>
> [Objection omitted.]
>
> A.    I did not.
>
> . . .

14

Q.     Approximately when did you first learn that asbestos exposure could cause lung cancer?

[Objection omitted.]

A.     Sometime after I had lung cancer. I can't recall exactly how long after. I know that I'm pretty sure the way I became aware of it, the causation, was when I started seeing ads for—law firms that were talking about that asbestos could be a cause for lung cancer. That was after I had cancer, and I didn't really pay much attention to them. I'd listen to the warnings about mesothelioma and knew that it was caused by asbestos, and that's the reason that I originally got the CAT scan.

Dkt. 452-4 at 1079–80. Mr. Israel's deposition further continued:

Q.     And so if your answers to interrogatories in this case suggest that you learned of the hazards associated with asbestos in 2016, would you agree that those would need to be corrected to reflect the date in the late '90s?

A.     I wasn't aware that they had anything to do with lung cancer. I knew they were a hazard. I was aware that people were dying of mesothelioma, so if I made a mistake in the answers that I made, then it was not an error that was deliberate.

. . .

Q.     So we can agree that if your answers to interrogatories mistakenly reflect you first learning of the health hazard of asbestos in 2016, that would need to be corrected; right?

A.     It would need to be corrected.

*Id.* at 994–95.

According to Mr. Israel, this deposition testimony cures "the supposed discrepancy" with his interrogatory response and should therefore control. Dkt.

15

452 at 3. Defendant John Crane, however, argues Mr. Israel sought to contradict his interrogatory response with his deposition testimony to avoid an adverse ruling on summary judgment.

The sham affidavit rule precludes a party from manufacturing a genuine dispute of material fact by contradicting prior deposition testimony with an affidavit. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). The rule applies when a party has given clear answers to unambiguous questions that negate the existence of any genuine issue of material fact, but that party attempts thereafter to create such an issue by contradicting the previous testimony without explanation. *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

The sham affidavit rule typically applies when an affidavit or declaration contradicts prior deposition testimony. *See Kilgore v. Trussville Dev., LLC*, 646 F. App'x 765, 771 (11th Cir. 2016) (collecting cases and recognizing typical application of doctrine). There is little case law in the Eleventh Circuit dealing with the specific circumstances here: when deposition testimony contradicts a prior interrogatory response. *See, e.g.*, *Armstrong v. Sailormen, Inc.*, No. 1:14cv44-MW/GRJ, 2018 WL 2041361, at *2 (N.D. Fla. Jan. 10, 2018) (implicitly applying sham affidavit rule to situation where deposition testimony contradicted prior interrogatory responses, but finding no conflict in that particular case); *see also*

*State Farm Mut. Auto. Ins. Co. v. Fam. Practice & Rehab, Inc.*, No: 6:18-cv-223-Orl-28LRH, 2019 WL 4418221, at *2 (M.D. Fla. Sept. 16, 2019) (granting summary judgment when opposing party's deposition testimony contradicted prior interrogatory responses). Courts in other circuits have applied the rule to these circumstances. *See, e.g.*, *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1171 (7th Cir. 1996) (holding that sham affidavit rule allowed district court to disregard deposition testimony that conflicted prior interrogatory response).

The Court holds that the sham affidavit rule may apply to the circumstances here. "The main practical reason supporting the sham affidavit doctrine is that prior depositions are more reliable than affidavits." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247 (3d Cir. 2007). So, too, are interrogatory responses more reliable than deposition testimony. Unlike deposition answers, interrogatory responses are generally provided after considerable thought and drafted with the assistance of counsel. *Thompson v. Bruister & Assocs., Inc.*, No. 3:07-00412, 2013 WL 1092218, at *5 (M.D. Tenn. Mar. 15, 2013). A plaintiff has greater ability to carefully shape his answers to interrogatories than to shape his answers to deposition questions. Indeed, courts have referred to interrogatories as "take home examinations." *See Burns v. Bd. of Cnty. Commr's of Jackson Cnty.*, 330 F.3d 1275, 1282 (10th Cir. 2003) ("Depositions differ from interrogatories in that regard. A deposition is not a take home examination.").

17

Were the conflict at issue between statements given by two separate individuals, summary judgment would be inappropriate because this Court may not weigh conflicting evidence. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985). The situation is quite different, however, when a witness has directly contradicted his own earlier statements without adequately explaining the contradiction. *Bank of Ill.*, 75 F.3d at 1168. The Court is mindful that the sham affidavit rule should be applied "sparingly because of the harsh effect it may have on a party's case." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1307 (11th Cir. 2016). But if the Court were to allow unexplained contradictions between interrogatory responses and deposition testimony, "the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." *Babrocky*, 773 F.2d at 861; *see also Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364 (8th Cir. 1983). The Court therefore holds that the spirit of the sham affidavit rule may apply to situations like these.

The Court must now analyze the inconsistencies between Mr. Israel's interrogatory response and deposition testimony. The sham affidavit rule applies to inherent, unexplained inconsistencies that create "transparent shams," not to discrepancies that merely create an issue of credibility or that go to the weight of

the evidence. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986). The differences between the responses must be irreconcilable. *Id.* at 954.

Here, the interrogatory response says Mr. Israel learned about the health hazards of inhaling asbestos when he was diagnosed with lung cancer in December 2016. Yet the deposition testimony says he learned that asbestos exposure could cause lung cancer sometime after his diagnosis in 2017.

The Court holds there is an irreconcilable conflict between these answers; one answer would bar Mr. Israel's claims under the maritime statute of limitations, while the other would allow his claims to proceed. When counsel asked Mr. Israel about this conflict during his deposition, Mr. Israel unequivocally and repeatedly dismissed his earlier interrogatory answer as a mistake. This was not a clarification or supplementation of his interrogatory response, but rather a complete repudiation. *See Bosarge v. Mobile Area Water & Sewer Serv.*, No. 20-14298, 2022 WL 203020, at *6 (11th Cir. Jan. 24, 2022) (holding that complete repudiation of prior testimony warranted application of sham affidavit rule). This repudiation shows the inherent inconsistency between Mr. Israel's sworn statements. *See Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1382 (Fed. Cir. 2010) (holding that party offered sham testimony when party's deposition testimony "unequivocally and repeatedly dismissed his earlier interrogatory answers as a mistake").

19

To reconcile this inconsistency, Mr. Israel argues his interrogatory response addresses the date he learned asbestos was *generally* hazardous, rather than the date he learned it caused lung cancer. Dkt. 452 at 3. But this attempt at reconciliation fails for several reasons.

First, the interrogatory response states Mr. Israel first acquired knowledge about the health hazards of inhaling asbestos *when he was diagnosed with cancer* in December 2016. This answer necessarily contemplates lung cancer as a health hazard of asbestos exposure. It strains credence to argue Mr. Israel learned about health hazards caused by asbestos exposure *except for lung cancer* at the very time a doctor diagnosed him with lung cancer.

Second, the interrogatory response was made in the context of a lawsuit seeking recompense for lung cancer. Although the interrogatory question asks when Mr. Israel learned about the "health hazards of inhaling asbestos"—without explicit reference to lung cancer—it belies common sense that Mr. Israel's interrogatory response would address health hazards *except for lung cancer* in a lawsuit all about lung cancer. This is especially germane considering Mr. Israel completed the interrogatories with the aid of counsel.

Finally, the remaining admissible evidence in this case—including the 1998 Complaint and medical reports from 2013 and 2014—comports with Mr. Israel's interrogatory response and rebuts Mr. Israel's deposition testimony. Acceptance of

Mr. Israel's unsubstantiated deposition testimony would require the Court to ignore decades of evidence showing Mr. Israel knew or should have known at the time of his December 2016 diagnosis that his lung cancer may have been caused by his prior exposure to asbestos. This stretches plausibility beyond the breaking point.

The Court will therefore disregard the portions of Mr. Israel's deposition testimony that contradict his interrogatory response. *See Bank of Ill.*, 75 F.3d at 1172 ("Disregarding, then, those portions of the depositions that contradict the [interrogatory response], the plaintiffs are left with no evidence [to avoid summary judgment]."). This is one of those rare cases where "a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised genuine issues of material fact to be decided by a jury." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011); *see also Bentley v. AutoZoners, LLC*, 935 F.3d 76, 87 (2d Cir. 2019) (holding that plaintiff could not rely on deposition testimony to raise a genuine issue of fact when "that testimony is inescapably and unequivocally contradicted by her own sworn and written statements"). Where factual assertions in sworn testimony are in direct conflict with the party's earlier discovery responses and are not supported by other evidence, the Court may disregard those conflicting assertions. *Reisner v. Gen. Motors Corp.*, 671 F.2d 91, 93 (2d Cir. 2001) (disregarding plaintiff's factual claims that contradicted earlier interrogatory

responses). The Court does so here. Mr. Israel's unsupported and self-serving deposition testimony is insufficient to avoid summary judgment. *Angel Med. Ctr., Inc. v. Abernathy*, 1 F. App'x 217, 218 (4th Cir. 2001) (holding that bald and self-serving allegations that conflict with prior interrogatory responses are insufficient to avoid summary judgment).

### 4.  Other Portions of Mr. Israel's Deposition Testimony

The following exchange occurred during Mr. Israel's deposition:

Q.     And my understanding from the deposition testimony when your attorney was asking you questions is that you asked for a checkup after a friend of yours was diagnosed with mesothelioma. So you wanted to get checked out, and that is when you found out you had lung cancer. Is that correct?

A.     Yeah. That's what—that led to my concern. Other people were— you know, that I had heard about *cancer* and mesothelioma. I was—yeah. I knew—mesothelioma is almost a hundred percent fatal. So, it got my attention. And in the procedure, the next appointment I had with my pulmonologist, I discussed it with him. And he said, 'Yes. We can do a precautionary CT scan.'

Dkt. 452-4 at 669–70 (emphasis added).

This testimony again shows Mr. Israel knew or should have known before September 2017 that asbestos exposure could cause lung cancer. Mr. Israel specifically states he sought medical advice from his pulmonologist because he heard concerning stories about mesothelioma *and cancer*. This concern prompted the pulmonologist to do a precautionary CT scan, which

eventually led to Mr. Israel's cancer diagnosis in December 2016.[8] By his own admission, Mr. Israel's concerns about developing asbestos-induced lung cancer caused him to seek precautionary screening in 2016.

### 5.  Medical Records from 2017

According to a medical report dated September 8, 2017, Mr. Israel hired an expert to review his medical history and diagnose the cause of his lung cancer. Dkt. 452-5. The expert stated: "Norman L. Israel suffers from interstitial and pleural disease and lung cancer caused by his exposure to asbestos while serving as a merchant mariner."[9] *Id*. According to Mr. Israel, this medical report is the only piece of evidence in this case that establishes "a firm earliest date on which Mr. Israel 'knew or should have known' the wrongful cause of his injury[.]"[10] Dkt. 452 at 4.

---

[8] During his deposition, Mr. Israel could not remember the year he received the precautionary CT scan. Dkt. 452-4 at 670. However, Mr. Israel's counsel concedes that his medical records show he received the precautionary CT scan in 2016. Dkt. 452-1 at 7 n.1.

[9] The Court notes that the expert's diagnosis links Mr. Israel's lung cancer to his time serving as a *merchant mariner*, as opposed to his time serving in the U.S. Navy. At issue in this case is Mr. Israel's alleged asbestos exposure while in the Navy.

[10] There is conflict between Mr. Israel's deposition testimony and his argument against summary judgment. During his deposition, when asked how he first learned asbestos exposure could cause lung cancer, Mr. Israel stated: "I know that I'm pretty sure the way I became aware of it, the causation, was when I started seeing ads for—law firms that were talking about that asbestos could be a cause for lung cancer." Dkt. 454-2 at 1079–80. In his summary judgment response, Mr. Israel argues he learned about the causal connection from the 2017 medical report.

Mr. Israel elides the "should have known" portion of the standard. Many of his arguments hinge on when he gained actual knowledge of the source of his cancer. *See id.* at 12 ("Contrary to Defendant's belief, it is well established that accrual occurs when a plaintiff *affirmatively* knows the *cause* of his injury.") (emphasis in original); *see also id.* at 8–9 ("Mr. Israel *did* timely file his claim within the 3-year statute of limitations period, as Mr. Israel 'knew' his lung cancer was wrongfully caused in 2017 at the earliest.") (emphasis in original). Mr. Israel misapplies the standard. The question is when Mr. Israel knew or *should have known* the source of his cancer. By its use of the disjunctive "or," the standard does not require actual knowledge of causation. *See Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467 (5th Cir. 1999) (stating that "[t]here is no requirement that [plaintiff] have actual knowledge of the particulars of the cause of action" and rejecting the plaintiff's theory that she could not have reasonably discovered her cause of action until surgeons validated her theory of injury and its cause). The Court therefore rejects Mr. Israel's assertion that the statute of limitations could not begin accruing until his retained expert physician explicitly stated that asbestos exposure caused his cancer.

When reviewing all admissible evidence in the record, it is clear this 2017 report confirmed what Mr. Israel already knew or should have known for several years: that his prior exposure to asbestos could cause him to develop lung cancer.

24

Although Mr. Israel now argues his doctors never "discussed asbestos' carcinogenicity" with him before the September 2017 report, Dkt. 452 at 2, the record shows this is untrue. Mr. Israel's doctor told him several years earlier that any future diagnosis of lung cancer may be caused by his prior asbestos exposure. This defeats Mr. Israel's unsupported and self-serving argument that he could not have known the cause of his cancer until the 2017 report. *See Dolling*, 83 F. Supp. 2d at 849–50.

### 6. Concluding Remarks

The inquiry here is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. Conclusory arguments that lack specific supporting facts have no probative value and will not create an issue of fact. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Hairston v. Gainesville Sun Publ'g Co*., 9 F.3d 913, 919 (11th Cir. 1993)).

Here, the only basis for Mr. Israel's position is self-serving and unsubstantiated sham deposition testimony. All other evidence—including the 1998 Complaint, medical records from 2013 and 2014, Mr. Israel's own interrogatory response, and other portions of Mr. Israel's deposition testimony—

25

shows that Mr. Israel knew or should have known at the time of his December 2016 diagnosis that his lung cancer may have been caused by his prior asbestos exposure.[11] Even viewing the evidence in the light most favorable to Mr. Israel—as the Court must at this stage—there is not a sufficient disagreement that requires submission of the statute of limitations issue to a jury. *Anderson*, 477 U.S. at 251–52. The Court holds that no reasonable juror could find otherwise.

Mr. Israel's cause of action began to accrue starting on at least December 21, 2016—when the injury was discovered and the cause of the injury was discoverable (*i.e.*, Plaintiff knew or should have known a cause of his injury). Because Mr. Israel filed his lawsuit on July 30, 2020—more than three years after this accrual date—his claims are barred by the three-year statute of limitations under maritime law. Defendant John Crane's Motion for Summary Judgment is therefore granted.

## CONCLUSION

The Court **GRANTS** Defendant John Crane's Motion for Summary Judgment, Dkt. 434. The clerk is directed to enter judgment accordingly.

**DONE AND ORDERED** at Tampa, Florida, on April 27, 2022.

---

[11] *See Dolling*, 83 F. Supp. 2d at 847–48 (holding that the maritime statute of limitations barred plaintiff's claims because there was no genuine dispute of material fact that plaintiff knew the alleged cause of his medical condition more than three years before filing suit); *see also McCain v. CSX Transp., Inc.*, 708 F. Supp. 2d 494, 500 (E.D. Pa. 2010) (same).

_/s/ William F. Jung_

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

27